155 So. 869

## BANKHEAD v. TOWN OF SULLIGENT et al.

### 6 Div. 576.

Supreme Court of Alabama.

June 14, 1934.

M. E. Nettles, of Jasper, for appellant.

Wm. B. White, W. M. Neal, and Bradley, Baldwin, All & White, all of Birmingham, amici curiæ.

For other cases see same topic and KEY NUMBER in all Key Number Digests and Indexes

Cabaniss & Johnston, of Birmingham, for appellees.

Jas. H. Willis, of Birmingham, and S. P. Gaillard, Jr., of Mobile, amici curiæ.

GARDNER, Justice.

The complaint is by a taxpayer and resident of the town of Sulligent (a municipality with a population of less than 6,000), and seeks injunctive relief against the municipality in its proposal to issue bonds and enter into a contract as to the acquisition and operation of a combined waterworks and sewerage system for said town, as authorized by what is known as the Kelly Act, approved March 29, 1933. See Acts 1933 (Ex. Sess.) p. 88.

The bonds to be issued are known as "revenue bonds," payable as to principal and interest solely out of the revenue derived from the operation of the proposed waterworks system.

In Oppenheim v. City of Florence (Ala. Sup.) 155 So. 859 [1] (this day decided), the holding was that such bonds did not create an indebtedness of the municipality, and that their issuance did not contravene either section 225 or section 222 of our Constitution. The entire discussion of that question is equally

---

[1] Post, p. 50.

applicable to this case, and needs no repetition here.

■ The bonds to be issued in the instant case are, as provided by the Kelly Act above noted, to have written upon their face that they are issued pursuant to said act, and do not constitute an indebtedness of the borrower within any state constitutional provision or statutory limitation. Differing in this particular from Oppenheim v. City of Florence, under the Kelly Act, these bonds are further secured by a mortgage lien on the newly acquired waterworks and sewerage system, but without authority to compel a sale thereof. But, as observed by the Kentucky court in City of Bowling Green v. Kirby, 220 Ky. 839, 295 S. W. 1004, this statutory lien is "not a meaningless expression."

In the event of default, a receiver may be appointed at the instance of a bondholder who may compel the imposition of rates for sufficient revenue to pay the interest on the bonds and for their retirement in accordance with the provisions of the ordinance. The Kelly Act specifically authorizes the municipality to fix rates sufficient to meet these obligations, and, while no restriction is expressly stated, yet we are of the opinion, in view of the language of section 18 of the act, and section 22 of our Constitution, adverted to in Alabama Water Co. v. City of Attalla, 211 Ala. 301, 100 So. 490, that the act is to be properly construed with a restriction that the rates imposed be reasonable and subject to review by the courts in that regard upon complaint of a consumer. 32 Corpus Juris, 421; Springfield Gas Co. v. Springfield, 292 Ill. 236, 126 N. E. 739, 18 A. L. R. 929.

Presumably, of course, the rates to be fixed will be reasonable as well as sufficient to meet the specified payments, and the authorities generally recognize the validity and binding force of such rate-making agreements enforceable in an appropriate proceedings. Barnes v. Lehi City, 74 Utah, 321, 279 P. 878; Shields v. City of Loveland, 74 Colo. 27, 218 P. 913; City of Bowling Green v. Kirby, 220 Ky. 839, 295 S. W. 1004; Bell v. Fayette, 325 Mo. 75, 28 S.W.(2d) 356; Kentucky Utilities Co. v. Paris, 248 Ky. 252, 58 S.W.(2d) 361; Shelton v. Los Angeles, 206 Cal. 544, 275 P. 421.

The instant case differs from that of Smith v. Town of Guin (Ala. Sup.) 155 So. 865,[2] this day decided, in most part in immaterial details, except as to the matters herein discussed. Greater administrative detail is perhaps provided for in the instant case than in that of the town of Guin, but in essential factors the cases are the same, and governed by like principles. Each sufficiently discloses no pecuniary liability on the part of the municipality, and no bondholder could possibly be misled in that regard.

The bonds carry that message upon their face, but for convenience of transfer by delivery merely the act provides (section 14) that they shall have the qualities of negotiable instruments under the law merchant and the Negotiable Instruments Law.

All matters not herein discussed are treated in Oppenheim v. City of Florence and Smith v. Town of Guin, supra, and need no elaboration here.

■ There is, however, one vital exception, which relates to the treatment of section 22 of the act, and which needs further consideration. Evidently the Legislature considered the ownership by these towns of waterworks and sewerage a matter of great benefit, and thought it advisable they be permitted, though having already reached their constitutional debt limit, to take advantage of federal aid at this time in their construction. It is also evident the lawmakers were apprehensive that in communities of this size the revenues may possibly at times be insufficient to meet all purposes, if operating expenses are first to be deducted, and thus it was intended to authorize such municipalities to make a voluntary appropriation out of its available income from other sources for operating expenses to the end that the bonds and interest thereon may be promptly paid when due.

In section 22 of the act, therefore, operating expenses are put secondary to the bonded indebtedness payments. This section expressly concludes with the statement that the bonds issued shall be payable solely from the revenues in the bond and interest redemption fund. But the provision for operating expenses on the part of the municipality was purely voluntary, and, if the funds were available in the treasury for that purpose, there can clearly be no valid objection to their use to that end. It is a system owned by the town, and of course is subject to operation by the town just so long as no new debt is created.

The voluntary feature in this regard is made plain by the next succeeding section,

---

[2] Post, p. 61.

which reads as follows: "Section 23. Nothing in this Act shall be construed to prohibit the borrower from appropriating and using any part of its available income or revenues derived from any source other than from the operation of such system or combined system in paying any immediate expenses of operation or maintenance of any such system or combined system, but nothing in this Act shall be construed to require the borrower to do so."

The whole act discloses there shall be no pecuniary liability fastened on the municipality, and it is argued that an agreement on the part of the town to operate the plant so that the gross revenues should first be devoted to the matter of bonded indebtedness is inconsistent with these other provisions against pecuniary liability and section 225 of the Constitution.

But it must be recalled we are dealing with the broad power of the Legislature, with full authority, except as restrained by the Constitution, and in this same act the lawmakers were careful to provide that, while these towns might voluntarily contribute out of available income otherwise obtained, they could not be compelled to do so. Therefore section 23 is supplementary to, and materially qualifies, the preceding section, and makes it plain that no legal obligation can be made to rest upon the town on account of any such stipulation. Not being a binding legal obligation, such a stipulation could never become a debt, and that is the only matter of inquiry here important.

It may create a moral obligation on the part of the town, but the act expressly states that nothing therein "shall be construed to require the borrower to do so." The bondholder is not misled. His bond refers to the act, and the act plainly prescribes the limitation.

 If the city fails or declines to furnish the operating expenses in the event the gross revenues are insufficient for the bonded indebtedness payments, then a default occurs which authorizes a receivership of the system, and the receiver then operates the system for the purpose of securing revenues to meet the bonded indebtedness.

The act provides, as before observed, that the principal of and interest upon such bonds shall be payable solely from the revenues derived from the operation of the system, and that it shall be plainly written on the face of each such bond and coupon that the same has been issued under the provisions of this act, and that it does not constitute an indebtedness of such municipality within any state constitutional provision or statutory limitation.

Clearly, therefore, the mere contribution on the part of the municipality of available income out of other sources for operating expenses violates no constitutional provision, and we are of the opinion that a stipulation to continue, if necessary, to so operate out of such available income, creates only a moral obligation in view of the express provision of section 23 of the act that the municipality may not be so required.

There is, by the very terms of the act, written into the face of such a stipulation that it is legally unenforceable.

Other discussion in the case of Smith v. Town of Guin, supra, is here adopted as a part of this opinion, but we are not in accord with the treatment of section 22 as found therein.

We conclude, therefore, that section 22, viewed in connection with section 23, is entirely valid.

The bill was without equity, and the demurrer thereto properly sustained.

Let the decree be affirmed.

Affirmed.

THOMAS, BROWN, and KNIGHT, JJ., concur.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., dissent as to section 22 of the act, as more fully appears in the expression of their views in the case of Smith v. Town of Guin, supra.