155 So. 865

## SMITH v. TOWN OF GUIN et al.
### 6 Div. 575.

Supreme Court of Alabama.
June 14, 1934.

M. E. Nettles, of Jasper, for appellant.

Wm. B. White, W. M. Neal, and Bradley, Baldwin, All & White, all of Birmingham, amici curiæ.

For other cases see same topic and KEY NUMBER in all Key Number Digests and Indexes

Cabaniss & Johnston, of Birmingham, for appellee.

Jas. H. Willis, of Birmingham, and S. P. Gaillard, Jr., of Mobile, amici curiæ.

BOULDIN, Justice.

This is a taxpayer's bill against the town of Guin and its corporate authorities to enjoin the issuance of municipal bonds in tho sum of $64,000 for the construction of waterworks and sanitary sewers under authority of the act of March 29, 1933, known as the Kelly Act. Acts 1933 (Ex. Sess.) p. 88.

This act, with others, was designed to enable towns and cities in Alabama, which are already indebted to the limit fixed by section 225 of the state Constitution, to purchase, construct, own, and operate needful public utilities, taking advantage of the liberal proposals of the Public Works Administration of the federal government, and so co-operating in the National Recovery Program.

In keeping with such purpose, the Governor has requested advisory opinions, and the justices of this court have rendered three advisory opinions touching the constitutionality of the acts in question. See In re Opinions of the Justices, 226 Ala. 18, 145 So. 481, dealing with the Goodwyn Act (Acts 1932, Ex. Sess., p. 264); In re Opinions of the Justices, 226 Ala. 570, 148 So. 111, dealing with the act now before us; and In re Opinions of the Justices, 228 Ala. 140, 152 So. 901, dealing

with the Carmichael Act (Acts 1933, Ex. Sess., p. 100).

Three test cases are now submitted and being considered together: T. E. Oppenheim v. City of Florence et al., 155 So. 859, involving the Carmichael Act, and proceedings thereunder; G. E. Bankhead v. Town of Sulligent et al., 155 So. 869,[1] and the instant case, both involving the Kelly Act and proceedings thereunder.

We take occasion to commend this method of procedure under all such conditions.

The bill sets out the ordinance of the town of Guin, the form of bond and interest coupon authorized by the ordinance, and the loan and grant agreement upon which the Public Works Administrator will extend the benefits of the loan and grant provisions of the National Industrial Recovery Act (48 Stat. 195).

The bill challenges and calls for a judicial decision on the constitutionality of the statute; specifically raises the point that the act is unconstitutional, because violative of section 225, prescribing the debt limit of towns of less than 6,000 inhabitants; and violative of section 222, forbidding the issuance of bonds unless approved by the voters at an election held for the purpose.

The act contemplates the construction of waterworks and sanitary sewers as one project, commonly known as self-liquidating project.

■ Section 7 declares: "The principal of and interest upon such bonds shall be payable solely from the revenues derived from the operation of the waterworks system," etc. And again: "No bond or coupon issued pursuant to this Act shall constitute an indebtedness of such borrower within the meaning of any State constitutional provision or statutory limitation. It shall be plainly stated on the face of each such bond and coupon that the same has been issued under the provisions of this Act and that it does not constitute an indebtedness of such borrower within any State constitutional provision or statutory limitation." Acts 1933 (Ex. Sess.) pp. 90, 91.

Bonds of this class are not inhibited by either section 222 or section 223 of the Constitution. These questions have been fully treated in the companion case of T. E. Oppenheim v. City of Florence et al., ante, p. 50, 155 So. 859. What is there said on this subject is incorporated as part of this opinion.

The court has been favored with briefs amici curiæ in this cause, which deserve some further consideration.

It is insisted that the proceedings of the Constitutional Convention, the ordinances or resolutions presented by the Committee on Taxation, and those presented by the Committee on Municipal Corporations, as disclosed by the Journal, and the debates disclosed by the published proceedings of the thirty-sixth and thirty-seventh days, show a definite disapproval of revenue bonds of this class, as an exception from debt limit provisions.

We have considered these proceedings copied in brief, and do not concur in the view that they show a definite expression of the convention to the effect suggested.

The "revenue bonds" mentioned in subsection (a) of the ordinance reported by the Committee on Municipal Corporations were of a class to be paid exclusively from a special assessment of taxes. That resolution, subsection (b), proposed to exempt waterworks and sewer bonds, issued on the general credit of all cities and towns, from the debt limit proposed. Journal C. C. pp. 598, 599.

As finally agreed upon, cities were placed in two classes. Those of under 6,000 population were given a debt limit substantially as provided in the ordinance proposed by the Committee on Taxation (Journal C. C. p. 274), and in cities of greater population waterworks and sewer bonds were wholly exempted from the debt limit provision, meaning bonds pledging the general credit of the city.

In course of argument, it was insisted that all towns and cities should, aside from the 3 per cent. clause, be left to finance such utilities as self-liquidating projects. On the other hand was emphasized the vital need for waterworks and sewers as related to the public health.

The aim of the section was to prescribe the limits of municipal debt, primarily a limitation on legislative power in this regard, not to define "debt" as used in the instrument.

It may be as easily inferred the convention deemed the unrestricted power to finance such enterprises as self-liquidating projects, together with the 3 per cent. clause, was adequate, for the smaller towns, or at least as far as they could safely go.

We have been furnished another brief amicus curiæ reviewing at length many authorities fully sustaining our decision in T. E. Oppenheim v. City of Florence et al., supra, holding that revenue bonds payable solely from operative income on the utility are not within the debt limit. We merely cite them. Shelton v. City of Los Angeles, 206 Cal. 544,

---

[1] Ante, p. 45.

275 P. 421; Mesmer v. Board of Public Service Com'rs of City of Los Angeles, 23 Cal. App. 578, 138 P. 935; Searle v. Town of Haxtun, 84 Colo. 494, 271 P. 629; Ward v. City of Chicago et al., 342 Ill. 167, 173 N. E. 810; Fox v. Bicknell, 193 Ind. 537, 141 N. E. 222; Johnston v. City of Stuart (Iowa) 226 N. W. 164; City of Bowling Green v. Kirby, 220 Ky. 839, 295 S. W. 1004; State ex rel. Smith v. Mayor, etc., of City of Neosho, 203 Mo. 40, 101 S. W. 99; Brockenbrough et al. v. Board of Water Com'rs of City of Charlotte, 134 N. C. 1, 46 S. E. 28; Lang v. City of Cavalier, 59 N. D. 75, 228 N. W. 819; Kasch v. Miller, Superintendent of Public Works, 104 Ohio St. 281, 135 N. E. 813; Bolton v. Wharton, 163 S. C. 242, 161 S. E. 454, 86 A. L. R. 1101; Sowell et al. v. Griffith (Tex. Com. App.) 294 S. W. 521; Barnes v. Lehi City, 74 Utah, 321, 279 P. 878; Winston v. City of Spokane, 12 Wash. 524, 41 P. 888; State ex rel. Morgan, Atty. Gen., v. City of Portage, 174 Wis. 588, 184 N. W. 376.

The bill, however, further challenges the Kelly Act upon the ground that, notwithstanding it contains the clauses above quoted, it carries other express provisions which in fact make the project a charge on the general revenues of the town, with covenants purporting to bind the municipality to incur outlays from year to year from the general revenues, thus imposing further tax burdens, and crippling the power to meet the lawful debts already incurred and maintain a city government.

If there are inconsistent provisions in the act as relates to the matter of incurring debt, the Constitution intervenes, writes itself into the act, and strikes out provisions violative thereof.

This would not render the act as a whole invalid, unless such provisions are such an integral and inseparable part of the legislative scheme as to render the whole abortive.

In considering this question, we think it advisable to here note first the meaning of "debt" as defined in our decisions.

■ A town indebted (as the bill avers the Town of Guin to be) to the constitutional debt limit is not prevented from carrying on because it has not in the treasury funds to meet every demand at the time it is incurred. It may incur obligations within the limits of the revenue levied, assessed, and in course of collection for the current fiscal year. Such funds are deemed constructively in the treasury. Brown, Treasurer, v. Gay-Padgett Hdw. Co., 188 Ala. 423, 66 So. 161; Hall v. Blan, State Treasurer, 227 Ala. 64, 148 So. 601.

■ But it cannot presently contract, or enter into any form of covenant, running into the future, binding the municipality to deplete its income for future years, imposing an extra burden on the taxpayer, or endangering the meeting of debts lawfully incurred. That is the reason for a debt limit.

■ The Constitution fixes the per centum of tax values which it is deemed safe and wise to go. This includes indirect or contingent liabilities. Hagan v. Commissioner's Court of Limestone County, 160 Ala. 544, 49 So. 417, 37 L. R. A. (N. S.) 1027; Gunter et al. v. Hackworth et al., 182 Ala. 205, 62 So. 101; Hall v. Blan, State Treasurer, supra; T. E. Oppenheim v. City of Florence et al., supra.

With these principles in mind, we turn to certain provisions of the Kelly Act here involved.

Section 22 (Acts 1933, Ex. Sess., p. 94) makes the "Bond and Interest Redemption Fund" a first charge on the gross revenues of the system, and makes the "Operation and Maintenance Fund" a secondary charge on remaining gross revenues; requires that such gross revenues from year to year be first set apart to the bond fund.

The maintenance and operation of the plant is of the essence of the entire scheme; that this will entail continuous outlays is self-evident; if not paid from gross revenues derived from operations, the only recourse is to the general revenues of the city.

This provision of the statute clearly contemplates a contractual obligation on the town to pay operating expenses out of general revenues from year to year, unless the operative income is sufficient after setting aside the required amount to the bond fund.

The ordinance follows this feature of the statute. At the same time it stipulates in section 7: " * * * And the town further covenants and agrees with the holders of said bonds, to maintain in good condition and continuously operate said system, provided that nothing herein shall be construed as requiring the town to expend any funds other than the revenues derived from the operation of the system."

The bond to be issued, payable to bearer, stipulates the bond fund shall consist of a sufficient sum to meet bond payments, paid into the fund from the gross income and revenues derived from operations. The negotiable interest coupon, payable to bearer, calls for the payment from such bond fund.

We are constrained to hold this feature of the act, and the proposed proceedings culminating in the issue of bonds of like tenor and

effect, are in contradiction of the general provisions declaring the general credit and revenues of the town are in no way bound. A contingent liability for operating expenses from year to year necessarily arises from provisions leaving no other source from which they can be paid. It may be said the town from year to year may voluntarily appropriate from its general revenues available funds, not necessary to meet lawful demands, to aid in keeping so important an enterprise going. Suffice to say, no town should invite the purchase of its bonds, and no court should sanction an issue stipulating as a contractual obligation something it cannot lawfully contract, but may voluntarily do under contingent conditions.

When payday comes, the town would be under a moral coercion to make good the terms of its agreement, or else turn the bondholder away with the unkind reminder that he was chargeable with knowledge that such stipulations were not binding.

Such contingencies have led some courts to treat all revenue bonds based on operative income as within the constitutional debt limit and other courts to declare the particular act violative of such constitutional safeguards as sections 222 and 224 of our Constitution. Fjeldsted v. Ogden City et al. (Utah, 1933) 28 P.(2d) 144; Wadsworth v. Santaquin City (Utah, 1933) 28 P.(2d) 161; Lesser v. Warren Borough (1912) 237 Pa. 501, 85 A. 839, 43 L. R. A. (N. S.) 839; Hight et al. v. City of Harrisonville (1931) 328 Mo. 549, 41 S.W.(2d) 155; Feil v. City of Coeur d'Alene et al., 23 Idaho, 32, 129 P. 643, 43 L. R. A. (N. S.) 1095.

█ While, for reasons given in the beginning of this opinion, we think the general and declared purpose of this act to authorize bonds payable alone from operative revenue, with no charge on the general revenues, no obligation to make future outlays therefrom, expressly disclaiming any pecuniary obligation involving the credit of the town, may be given effect, that therefore the act is not unconstitutional as a whole, but we must hold section 22, in so far as it calls for payment of the bonds from the gross income or revenues, to be void. Such stipulation should not be written into the contract, and the "Bond and Interest Redemption Fund" should be made a charge only on net income, the actual income after meeting expenses of operation and maintenance, until such time as the city's indebtedness shall be within the debt limit.

Reference is made to other outlays required to meet preliminary expenses, procure real estate, rights of way, etc.

So far as these may be and are met from current revenues as defined in Brown, Treasurer, v. Gay-Padgett Hdw. Co., supra, no debt would arise. But, if no funds are on hand or in process of collection for the ensuing year to meet them in whole or in part, other provisions should be made.

We incorporate in this opinion what is written in T. E. Oppenheim v. City of Florence et al., supra, touching reasonable service rates, the binding obligation on the corporate authorities, all officers and agents, to faithfully perform the duties imposed; and the remedies, civil and criminal, legal and equitable, to enforce performance, to the end that the money borrowed be faithfully applied, that the plant be operated in a businesslike manner, that the net operative income be faithfully set apart and held in trust to meet the installments of interest and principal of the bonds as they mature.

Public securities, and the contracts behind them, should be clear and unambiguous; should contain no illegal provisions, notwithstanding the holder must be treated as being charged with knowledge that such illegal provisions are stricken from the contract by the law of the land. The credit of public institutions generally is involved. It is eminently proper that these matters be settled in advance.

The bill has equity to enjoin this issue of bonds under the proceedings as now framed.

The foregoing expresses the opinion of the writer, in which Chief Justice ANDERSON and Justice FOSTER concur.

█ The majority, however, hold the case should be affirmed on the authority of G. E. Bankhead v. Town of Sulligent et al., ante, p. 45, 155 So. 869.

Affirmed.

GARDNER, THOMAS, BROWN, and KNIGHT, JJ., concur.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., dissent.