**GUAM TELEPHONE AUTHORITY,**
**Plaintiff,**

v.

**Jose R. RIVERA, Defendant.**

**Civ. No. 76–01.**

District Court of Guam.

April 26, 1976.

Jose Leon Guerrero, Agana, Guam, for plaintiff.

Jack A. Rosenzweig, Ching, Rosenzweig, Boertzel & Price, Agana, Guam, for defendant.

OPINION

DUENAS, District Judge.

This is an action for declaratory judgment and an order in the nature of mandamus.

Plaintiff is the Guam Telephone Authority, a public corporation and autonomous

---

instrumentality of the Government of Guam. Defendant, Jose R. Rivera, is the Assistant Secretary of the Authority. On December 13, 1975, the plaintiff, hereinafter referred to as "GTA", issued a Preliminary Resolution authorizing the issuance of $15,000,000 of Guam Telephone Authority Government-guaranteed revenue bonds. Said resolution also directed the defendant to forward the resolution to the Governor and Legislature of Guam for approval, as prescribed by § 21704 of the Government Code of Guam. Defendant refused to transmit the resolution to the Governor and the Legislature on the ground that the resolution violates Section 11 of the Organic Act of Guam (48 U.S.C., § 1423a) and Section 24 of Public Law 13–110.

Defendant based his refusal to transmit the resolution on the ground that the resolution provided for the issuance of bonds which would require the Government of Guam to advance to GTA funds to cover any deficiency if GTA was not able to meet the debt service on the bonds, and Section 24 of Public Law 13–110 provides that bonds issued with such requirement may not be issued until a court of competent jurisdiction has ruled that such condition will not render the bonds an indebtedness of Guam within the meaning of Section 11 of the Organic Act.

The controversy in this action arose when the Guam Legislature enacted Public Law 13–110. Public Law 13–110 added Section 21702.1 to the Government Code of Guam and provided that GTA had the power to issue bonds concerning advance of revenue deficiencies by the Government of Guam.

"*Section 21702.1. Advance of Revenue Deficiencies.*

(a) Notwithstanding other provisions of this Chapter, the Authority may issue bonds containing covenants concerning advance of revenue deficiencies by the Government of Guam contained in this Section, subject to the conditions herein. It is the purpose of this Section to permit the issuance of bonds by the Authority which will have additional security, but which will not, by the addition of the covenants herein, be a charge against or be considered public indebtedness of Guam as set forth in Section 11 of the Organic Act.

(b) Subject to approval of the Legislature and Governor and other provisions of this Chapter, the Authority may issue bonds containing covenants hereinafter set forth by providing in the indenture:

(1) for the creation and maintenance until all bonds are redeemed, or otherwise provided for, of

(i) a bond reserve fund equal to at least one year's average annual debt service, and

(ii) a revenue delinquency fund equal to at least ten percent of the estimated gross revenues of the Authority from year to year;

(2) for the prompt collection of all delinquent rates and charges.

(c) In the event all of the covenants and conditions set forth above shall have been provided for in the bond indenture, and in the event the Authority shall have collected insufficient revenues to pay in full all interest and principal due in any year, requiring satisfaction of such debt service out of the bond reserve fund, the Board shall adopt a resolution determining the amount of such deficiency incurred for debt service in said bond reserve fund each year, and from year to year. A certified copy of such resolution shall be transmitted to the Guam Legislature and shall be conclusive as to the amount of such deficiency. Upon the receipt of such resolution, the Legislature shall promptly appropriate from any funds of the Government of Guam available therefor and cause to be transferred to the Authority for deposit in such bond reserve fund, the full amount of such deficiency. In the event such funds or any part thereof are not immediately available, the Legislature shall cause the amount of such deficiency to be included in the budget for the Government of Guam for the next succeeding fiscal year and shall provide such funds as promptly as possible in such fiscal year out of tax

or any other revenues available to the Government so that all deficiencies in said bond reserve fund shall be restored. After satisfaction of all annual debt service, maintenance and operation costs, and restoration of deficiencies in the revenue delinquency fund and bond reserve fund, the Authority shall reimburse to the Government of Guam all sums hereafter to be advanced to the Authority as promptly as possible.

(d) In the event the Authority at any time receives sufficient funds from the Federal government or any agency thereof on such terms and conditions as the Authority may deem appropriate and such funds are adequate to pay the principal amount of the bonds outstanding at that time, the Authority may repurchase or refund all such outstanding bonds."

Public Law 13–110 in essence provides that the Government of Guam will make up any deficiency if in any given year GTA does not have the necessary funds to cover its debt service. The Act further provides that in the following year GTA is required to reimburse the Government of Guam for any sums advanced to make up a deficiency in the bond reserve fund. Counsel for both parties refer to the procedure as contemplated by the Act as "Contingency bonding".

Section 11 of the Organic Act of Guam provides in part a debt ceiling on public indebtedness in Guam:

"  .   .   . Provided, however, That no public indebtedness of Guam shall be authorized or allowed in excess of 10 per centum of the aggregate tax valuation of the property in Guam. Bonds or other obligations of the government of Guam payable solely from revenues derived from any public improvement or undertaking shall not be considered public indebtedness of Guam within the meaning of this section."

The issue to be decided in this matter is whether the issuance of bonds by GTA with contingent backing by the Government of Guam as contemplated in Public Law 13–110 constitutes a public indebtedness under Section 11.

Section 11 is similar to sections included in the Constitutions of most states. Courts have traditionally interpreted the term "debt" to include a wide variety of financial arrangements. However, courts have also carved out exceptions to such broad definitions of the term. Some of these exceptions include obligations which are mandatory (i. e., imposed by law), debts incurred *ex delicto,* debts paid from a special fund, debts paid through special assessment districts and obligations incurred pursuant to a lease purchase contract.

Section 11 itself includes a special fund exception, namely, "bonds or other obligations of the government of Guam payable solely from revenues derived from any public improvement or undertaking shall not be considered public indebtedness of Guam within the meaning of this section".

If the Government of Guam did not guarantee to make up any deficiency in the bond reserve fund, it is clear that no indebtedness would be incurred since the bonds would be payable *solely* from the revenues of GTA. However, the bonds are guaranteed by the Government of Guam and the Court is presented with the issue of whether such a contingent liability creates an indebtedness.

Both parties have cited numerous cases to support their positions. Plaintiffs rely largely upon the United States Supreme Court case, *City of Walla Walla v. Walla Walla Water Co.,* 172 U.S. 1, 19 S.Ct. 77, 43 L.Ed. 341 (1898), and the California Supreme Court case, *American Co. v. City of Lakeport,* 220 Cal. 548, 32 P.2d 622 (1934).

In *City of Walla Walla,* the plaintiff entered into a twenty-five year contract with the defendant for the supply of water at $15,000 a year. The issue before the court was whether this long-term contract created a debt of $37,500. The court held that there is a distinction between a debt and a contract for a future indebtedness to be incurred upon the furnishing of goods or services. In *City of Walla Walla,* the annual rental was held not to create an indebt-

edness until the water had been furnished and therefore was not an indebtedness in violation of its municipal charter.

In *Lakeport,* the City of Lakeport formed an Improvement District for the purpose of improving Main Street and issued bonds pursuant to the Improvement Bond Act of 1915 to raise the necessary funds for the improvements and provided that the bonds would be paid for by special assessments on property within the improvement district. The Improvement Bond Act of 1915 also provided that if a landowner did not pay the assessment against his property, then the City would sell the property to the highest bidder. If no bidder appeared at the sale, then the City would buy the property. If the City did not have the necessary funds to buy the property in the amount of the assessments against the property, then the City must include a suitable amount in the next tax levy to pay the assessments. The Court held that the liability incurred by the City of Lakeport was one not "voluntarily assumed" but rather was one "imposed by law". Moreover, the liability depended upon numerous contingencies: (1) that the landowner would fail to pay his assessment, (2) that the tax delinquency sale would not produce a buyer, and (3) that the landowner would not redeem his property.

Plaintiff has cited case authority from at least 16 states other than California to support his position. However, almost all of the cases cited by plaintiff involved situations similar to those in *City of Walla Walla* and *Lakeport* in which the municipal corporation entered into a long-term contract or lease agreement or the municipal corporation incurred some liability through an improvement district. Only two jurisdictions appear to support plaintiff's view of contingency bonding and those are Missouri and South Carolina.

In South Carolina, plaintiff's theory seems to be somewhat in doubt.

The series of South Carolina cases cited by plaintiff have all been questioned by the Supreme Court of that state in *Robinson v. White,* 256 S.C. 410, 182 S.E.2d 744 (1971). In *Robinson,* the Court ruled that the is-

suance of revenue bonds by the City of Greenville to construct off-street parking facilities, which would be paid by revenues from the facilities, constituted an indebtedness since the City pledged as additional security the revenues from business license taxes.

Defendant relies primarily upon a series of California cases to support his position. *Garrett v. Swanton,* 216 Cal. 220, 13 P.2d 725 (1932), *City of Oxnard v. Dale,* 45 Cal.2d 729, 290 P.2d 859 (1955), *City of Palm Springs v. Ringwald,* 52 Cal.2d 620, 342 P.2d 898 (1959), *City of Redondo Beach v. Taxpayers,* 54 Cal.2d 126, 5 Cal.Rptr. 10, 352 P.2d 170 (1960).

Of all cases considered by the Court, *City of Oxnard v. Dale, supra,* is probably more on point than any other case. The City of Oxnard owned a sanitary sewer system which was financed largely by the issuance of general obligations bonds. Revenues from the sewer system were used to pay the debt service on some of the bonds and pay for the operating expenses of the system. However, the sewer revenues were not pledged to retire the bonds and the City did not intend to retire the bonds from such revenues. The City did desire to issue some more sewer bonds to finance the construction of some interceptor lines. The new bonds were to be payable exclusively from the revenues of the sewer system and were not to be secured by the taxing power of the City. The court held that such bonds came within the special fund doctrine and did not constitute an indebtedness under Section 18 of Article XI of the California Constitution. The Court set forth its view of the special fund doctrine:

"It is settled in California and recognized in almost all of the other states that, as a general rule, a constitutional provision such as section 18 of article XI is not violated by revenue bonds or other obligations which are payable solely from a special fund, provided the governmental body is not liable to maintain the special fund out of its general funds, or by tax levies, should the special fund

prove insufficient." *City of Oxnard,* 290 P.2d at 861.

The fact that Public Law 13–110 commits the Government of Guam to pay to GTA any deficiencies in the bond reserve fund from general tax revenues prevents the special fund doctrine's application to the proposed bond issue.

Even if the special fund doctrine applied to this state of facts, there is authority that these bonds would still constitute an indebtedness of the Government of Guam under Section 11.

Public Law 13–110 provides that the bond repayment constitutes a charge against gross revenues instead of net revenues. The Act requires GTA to apply its gross revenues first to the repayment of the bonds and then to the operation and maintenance fund. If the gross revenues are not sufficient to cover the bond repayment, then the Government of Guam is required to make up the deficiency. However, if the bond reserve fund is empty, then it must follow naturally that the gross revenues are not sufficient to cover the maintenance and operation expense of the system. The very essence of the plan is for GTA to operate and pay back its bondholders from its operating revenue. If the operating revenues prove insufficient to cover the maintenance and operation expenses, then the logical conclusion is that the Government of Guam will be forced to pay the operation and maintenance expenses of GTA itself. If the bondholders were secured by only net revenues, no burden would be incurred by the Government of Guam to pay any possible operating expenses. Operating expenses would all be paid before the debt service was paid.

Defendant cites the case of *Smith v. Town of Guin,* 229 Ala. 61, 155 So. 865 (1934), in support of this contention. The Court must agree with plaintiff that *Smith* is weak authority, and the court has not been able to find any other cases similar to *Smith.* However, the Court is of the opinion that the argument expressed by the Supreme Court of Alabama has merit.

Plaintiff expressed the view that the Court should adopt the more liberal theory of contingency bonding so the Governor and Legislature would have more flexibility in attempting to finance Guam's public services. The flexibility the plaintiff advocates could doubtless be used to good advantage by the Governor and Legislature. However, the purpose of Section 11 is to place restraints upon the Governor and Legislature. Those restraints are intended to benefit the taxpayer by restraining the government's propensity to incur debts and to saddle future generations of taxpayers with those debts. Such restraints promote fiscal responsibility. Section 11 serves a purpose just as do similar provisions in the Constitutions of the various states. If the Court adopted the liberal view exposited by plaintiff, the Legislature would not be restrained from authorizing the issuance of bonds with contingency backing to improve the Commercial Port, to pay for the capital improvements of the Guam Power Authority, to build a new hospital, or to provide public housing.

The purpose of Section 11 is to prevent a legislature from incurring these contingent types of debts. The Court agrees with *McQuillin's* view of attempts to avoid Constitutionally imposed debt limitations.

"Debt limitation provisions are designed to promote the common good and welfare. It is their purpose to serve as a limit to taxation and as a protection to taxpayers; to maintain municipal solvency, both governmental and proprietary; and effectually to protect persons residing in municipalities from the abuse of their credit, and the consequent oppression of burdensome, if not ruinous, taxation." *McQuillin* (3rd ed.), § 41.02.

Attempts to evade that limitation provisions by subterfuge are universally frowned upon. *McQuillin,* § 41.15.

The Court takes judicial notice of the fact that if GTA issued 15 million dollars of revenue bonds, the 15 million dollars would fall well within the present debt ceiling set by Section 11. The Court's decision does not prevent the issuance of bonds by GTA

with contingent backing from the Government of Guam. The Court merely finds that such an obligation is an indebtedness under Section 11.

Writ of Mandate shall not issue.