THE STATE *ex rel.* GLENN, *Collector, Appellant,* v. THE MISSISSIPPI RIVER BRIDGE COMPANY *et al.,* *Appellants.*

134   321
c169  5577

Division One, May 26, 1896.

1. **Contract:** CONSTRUCTION OF: BRIDGE COMPANY. A contract, by one owning a bridge franchise, with a bridge company, for its erection, construed and *held* to vest the ownership of the bridge in the company.

2. ———: LEASE: RAILROAD: BRIDGE COMPANY: TAXATION. A railroad company accepting a lease from a bridge company *held* estopped to defeat the taxation of such bridge in the name of the bridge company.

3. ———: ———: ———: ———: ———. A lease of a bridge in perpetuity with a clause of defeasance does not constitute the lessee the owner for the purpose of taxation.

4. **Taxation:** STATUTE: BRIDGE: LEASE. Under section 7755, Revised Statutes, 1889, a bridge across the Mississippi River, the legal title to which is in a bridge company, is taxable as a bridge and not as a part of the railroad to which it is leased.

VOL. 134 mo—21

5. ——: ——: ——: ——. Under section 7564, Revised Statutes, 1889, a tax for city purposes on bridge property is invalid without authority from the circuit court or the judge thereof in vacation.

6. ——: ——: ——: ——: CONSTITUTION: PRESUMPTION. A township tax to pay railroad aid bonds will be presumed to have been levied for bonds issued prior to the going into effect of the constitution of 1875, and consequently as not subject to the provisions of Revised Statutes, 1879, section 7654, requiring taxes other than state and county taxes to be levied only on an order of the circuit court or of the judge thereof in vacation, such statute having been enacted in 1879.

Appeal from Pike Circuit Court.—HON. R. F. ROY, Judge.

AFFIRMED.

Ras. Pearson, Jas. W. Reynolds, and Fagg, Ball & Hicks for plaintiff, appellant.

(1)   This case has once been heard by the supreme court, and is reported in 109 Mo., page 253.   In that opinion the court decided expressly and emphatically that the Mississippi bridge, here in question, was included within the language, no less than the spirit and intent, of section 7765, Revised Statutes, 1889.   Therefore we insist that it is not now open to further adjudication, but is res adjudicata as to all questions decided in that opinion.   Perkens v. Fielding, 119 Mo. 149; In re Estate of Meeker, 45 Mo. App. 186.   (2)   The Chicago & Alton Railroad Company was not a proper or necessary party and was so decided in this case, 109 Mo. page 253, therefore is now res adjudicata.   See above authority.   Besides it could not of its own motion be made a party with or without consent of plaintiff, but as a matter of fact plaintiff denied the right of the road to be made a party.   21 Mo. App. 520; 29 Mo. App. 271. (3)   It does not appear from the evidence in the case, when the bonded indebtedness was created or when the

bonds were issued, therefore it will be presumed that the debt was created and bonds issued prior to enactment of section 7654, Revised Statutes, 1889. *State ex rel. v. Railroad*, 113 Mo. 297. But in addition to this we insist that the records of the county court show that an order was issued in 1879 by Hon. G. Porter on the county court of Pike county to make the levy. (4) Since the adoption of the constitution of 1875, townships can not become indebted in any manner in aid of railroads; therefore the presumption that this debt was created prior to the enactment of section 7654. This section has been declared unconstitutional so far as it applies to debts prior to this statute. *Sibert v. Lewis*, 122 U. S. 284; *State ex rel. v. Railroad*, 113 Mo. 297. (5) We also insist that section 7654 does not apply to the city of Louisiana taxes. *State ex rel. v. Railroad*, 113 Mo. 239; *State ex rel. v. Railroad*, 101 Mo. 136, and authority there cited.

*M. J. Scrafford* and *J. G. Trimble* for defendants, appellants.

(1) Plaintiff's objection to the introduction of any evidence was properly overruled, as the Chicago & Alton Railroad Company is "the real party in interest," and hence a proper party to the suit. Section 1990, Revised Statutes, 1889. This question, however, is not before the court, as no exception was taken at the time motion to be made party was sustained. *State v. Reid*, 89 Mo. 168, and authorities cited. (2) Objections to Stewart's testimony were properly overruled. His testimony was not concerning the contents of a record, but that there was no record. *Sweet v. Maupin*, 65 Mo. 65. (3) The finding as to Louisiana city tax is right. *First.* The levy was not authorized because no certificate therefor was filed. Section 7730, Revised Statutes,

1889; *City of Kansas v. Railroad*, 81 Mo. 285. *Second.* And because no order of circuit court was made commanding levy. See authorities under point 4. (4) Judgment as to Buffalo township tax is erroneous. Taxes other than state, school, and county expenditure levied without order of circuit court are invalid. Section 7654, Revised Statutes, 1889; *State ex rel. v. Railroad*, 87 Mo. 236; *State ex rel. v. Hager*, 91 Mo. 452; *State ex rel. v. Railroad*, 92 Mo. 137; *State ex rel. v. U. T. Co.*, 92 Mo. 157; *State ex rel. v. Railroad*, 97 Mo. 296. (5) The bridge is not taxable as a separate property. *First.* It is not a toll bridge. *State ex rel. v. Railroad*, 97 Mo. 348. *Second.* It is not owned by a "joint stock company." If the Mississippi River Bridge Company be an entity and the owner of the bridge it is a corporation. A "joint stock company" is not a corporation. 1 Bouvier's Law Dict. 757; 11 Am. and Eng. Encyclopedia of Law, 1036, *et seq.*; *Frank v. Drenkhahn*, 76 Mo. 508. *Third.* A bridge used exclusively for railroad traffic is a part of the railroad and not a separate property. *Anderson v. Railroad*, 117 Ill. 26. (6) Even if the Mississippi River Bridge Company were an entity and the owner of the bridge, its conveyance makes the Chicago & Alton Railroad Company the owner. A lease in perpetuity is equivalent to an absolute conveyance. Anderson's Law Dict. 606; 2 Bouvier's Law Dict. 17; *Arms v. Burt*, 1 Vt. 306; *Railroad v. Boyd*, 118 Ill. 73. (7) From inception to completion everything was done by the Chicago & Alton Railroad Company at its own expense. It used other names when compelled to, but always for itself. It is and always has been the owner of the bridge. The Mississippi River Bridge Company is and always has been a myth—a name—and incapable of ownership.

ROBINSON, J.—This is a suit under the statute to recover taxes assessed for state, county, municipal, and township purposes, by the county court of Pike county for the year 1889, on the Missouri portion of the railroad bridge and approaches at Louisiana, Missouri.

Previous to the first trial of this cause in the lower court, the Chicago & Alton Railroad Company, upon its own application, was made a party defendant, and filed its answer setting out a state of facts that it claimed made it the real party in interest, and the one to whom the property should have been assessed. It then claimed the use of the entire bridge property under and by virtue of a perpetual lease executed to it, by the Mississippi River Bridge Company at the time of the construction of the bridge. That by said lease in perpetuity, the entire bridge across the Mississippi became the property of the railroad, and a part of its line of railroad from Chicago in the state of Illinois to Kansas City in the state of Missouri, and that by the terms and conditions of said lease, the defendant, the Chicago & Alton Railroad Company, became responsible to the defendant bridge company for the payment of all taxes and assessments, state, county, and municipal, which might be lawfully assessed against the bridge company, and that the Chicago & Alton Railroad was in the exclusive possession, use, and control of said bridge, and that it, in connection with its main and leased line of railroad, was used solely for railroad transportation. It was further contended upon the first hearing, that the bridge in question was neither owned by a joint stock company, nor was it a toll bridge, but that it should be taxed merely as a part of its railroad line.

On the issues as then made the trial court, at its first hearing, found for the defendants, on the theory

that the bridge property was improperly assessed, and should have been treated for taxation as a portion of the line of the Chicago & Alton Railroad Company.

The case on reaching this court was reversed and remanded, and in the opinion then rendered, reported in the 109 Mo. 253, it was decided that the bridge was subject to be taxed as the property of the Mississippi River Bridge Company under section 7755 of the revenue laws of 1889; that the mere fact that the bridge was built for railroad trains to pass over and upon, and was used exclusively as and for a railroad bridge, did not entitle it to be assessed as railroad property unless it was in fact owned by the railroad company. And in construing the lease from the Mississippi River Bridge Company, to the defendant Chicago & Alton Railroad Company, made in perpetuity in terms, this court then held, that by reason of the defeasance clause of the lease, the bridge, and not the railroad company, still held the paramount legal title to the property, subject only to the lease of the railroad, and was subject to be assessed as such under section 7755 and not as railroad property; that whether a toll bridge or not, under the authority of *State ex rel. v. Railroad*, 89 Mo. 103, such corporations as the Mississippi River Bridge Company are intended to be embraced within the term joint stock companies.

When the case was first before this court on appeal the sole and only question presented was as to the authority of the assessment; that is, that the bridge property was not subject to the tax imposed. No challenge was then made, as now, as to the irregularity of the assessment by the state board of equalization and the levy by the county court.

The case on the issues thus presented being decided against this appellant (then respondent) was sent back to be retried in accordance with the opinion then

delivered, when the defendants filed an amended answer, setting up substantially the same facts which had been relied upon by the defendant Chicago & Alton Railroad Company on the first trial to show its right and interests in the premises, to which opinion reference has been made for the ascertainment of the facts as then and now plead, and as disclosed by the testimony on that branch of the controversy, and, in addition, defendants now claim that the bridge with all its property belonged of right to the Louisiana & Missouri River Railroad Company, subject to whatever rights, if any, the Mississippi River Bridge Company had to its exclusive possession, and that by reason of an agreement between the Louisiana & Missouri River Railroad Company and the Chicago & Alton Railroad Company, the latter had such an interest as to make it a necessary party still.

And it was further alleged that, under the act of congress authorizing the location and construction of the said bridge, the Mississippi River Bridge Company had no right or authority to do any of the said work except as the agent and servant of the Louisiana and Missouri River Railroad Company. That the defendant, the Chicago & Alton Railroad Company, furnished all of the money for the building of the bridge and that the same had not been repaid to it nor was it in any way indemnified for its outlay until some years thereafter when three thousand shares of stock in the said bridge company (being the entire amount of stock issued by the bridge company) was turned over to the defendant railroad company, and that on the same day the said bridge company executed and assigned to the Chicago & Alton Railroad Company seven hundred bonds of the par value of $1,000 each and that said railroad company is now the sole owner and holder of all the bonds issued by said bridge company. It admits the exist-

ence of the bridge company as a corporation and still claims the entire use, occupation, and control of the bridge under and by virtue of the lease executed by the said bridge company to the Chicago & Alton Railroad Company in perpetuity.

The amended answer set up in addition to the above the further fact that the taxes sued for were not legally assessed and levied for the reason that the assessment and levy of taxes designated in plaintiff's petition as "Bond and Interest Tax" "Buffalo Township Tax" and "For City of Louisiana and other Municipal purposes" is void for the reasons that before the pretended levy thereof neither the circuit court of Pike county or the judge thereof in vacation had made an order directing same to be levied and assessed, and that the assessment and levy of the taxes designated in plaintiff's petition as "For City of Louisiana and other Municipal purposes" is illegal and void for the further reason that the city council of said city failed to certify, on or before the tenth day of March, 1889, to the county court of Pike county, a statement of the rate per cent levied by said city on all property therein for municipal purposes for that year.

The additional facts set up in the amended answer for the purpose of showing equitable rights and claim upon the bridge property by the defendant railroad company do not change the relation of the parties, nor affect the question so decided by this court upon the former hearing, as will hereinafter be shown.

The question as to the ownership of the bridge property (which under our revenue law determined the party to whom it must be assessed), was sought to be shown to be in the defendant the Chicago & Alton Railroad Company by reason of a lease in perpetuity to it from the Mississippi River Bridge Company. This court on that appeal, after stating all the facts

bearing upon the construction of the bridge (to which reference is now made for facts on that branch of the case in this appeal), and fully considering the lease from the bridge company to the defendant railroad company, uses this language:

"It is clear from this statement of the substance of the instrument that, notwithstanding the long term the tenancy may normally endure, the paramount title remains in the bridge company. The lease is subject to a defeasance in event of any failure, on part of the lessee, to meet all its requirements, and its entire scope and effect exclude the notion of any attempt at a transfer of the title outright. This view of its results in the ruling that the property is yet 'owned' by the bridge company within the meaning of the section for the taxing of bridges; for it can not require a moment's consideration to determine that such corporations were intended to be embraced within the term 'joint stock companies.' Its retention of ownership imposes the burdens incident thereto under the plain words of the law. Indeed, there is much therein to indicate that such bridges as this were directly in contemplation in its enactment."

The defendant railroad company now contends that the decision on the first appeal as to the ownership of the bridge was based solely upon the construction of the defeasance clause of the lease from the bridge company to it, and whereas it is now made to appear that, under an act of congress authorizing the construction of the bridge, no company but the Louisiana and Missouri River Railroad Company was authorized to construct and maintain the same, and that the Mississippi River Bridge Company had no authority under said act to construct or maintain said bridge, and that whatever said bridge company did in and about the construction of said bridge, was done as

the agent and servant of the Louisiana & Missouri Railroad Company; that the bridge with all its property belongs of right to the Louisiana & Missouri River Railroad Company, subject, however, to whatever right the Chicago & Alton Railroad Company had to its exclusive possession and use under the lease conveyance above mentioned, from the bridge company to the defendant railroad company, and further subject to the right of the railroad company to the same as after acquired railroad track of the Louisiana & Missouri River Railroad Company pursuant to a lease from that company of date August 1, 1887, whereby all and singular its incomplete and unfinished railroad, together with the railroad track, right of way, and depot ground and privileges acquired and to be acquired were conveyed to the defendant railroad company for one thousand years; that it is still the owner of the bridge property, notwithstanding the defeasance clause in the lease accepted by it from the bridge company.

While it is true that under the facts of this case the reason for the creation and existence of the bridge company is not very manifest, still it is more than a myth as the defendant railroad company chooses now to designate it. It was created and maintained, officered and controlled by the same board of directors that controlled and managed the defendant railroad company; and that company from time to time advanced money to the bridge company as was necessary to construct the bridge now in controversy, under its contract with the Louisiana & Missouri River Railroad Company, and under whom defendant railroad company now claims the bridge as a part of the railroad line leased from the said Louisiana & Missouri River Railroad Company.

The Louisiana & Missouri River Railroad Com-

pany on the fifth of July, 1873, having procured authority from congress to construct and maintain a bridge over the Mississippi river at Louisiana, for the purpose of enabling its lessee (the defendant railroad company) to connect its leased railroad with its main line road, on opposite sides of the river at that point, entered into a contract with the Mississippi River Bridge Company for the construction of said bridge at that point. By said contract the bridge company was to do all acts and things that said Louisiana & Missouri River Railroad Company could or might lawfully do or perform, by an agent, in the discharge of the duties of such employment and agency, and said Mississippi River Bridge Company was authorized to act in its own name or in the name of the Louisiana & Missouri River Railroad Company, as it, the bridge company, might from time to time think proper. By said contract said bridge company was to advance for the Louisiana & Missouri River Railroad Company all such sums of money as should be required for the construction and maintenance of the bridge, and the approaches thereto; and in consideration of such advances, and the acquiring and constructing of the approaches to the bridge, and for the services of the bridge company, said bridge company should forever have the exclusive possession and use of said bridge, which exclusive use and possession was expressed to be in liquidation of all sums of money advanced by said bridge company and for its services to be performed under said contract. It was further agreed in that contract that each party should at all times thereafter execute all such instruments and do all acts and things as might be necessary to carry the agreement into effect.

Shortly after the completion of the bridge by the bridge company, under its contract with the Louisiana

& Missouri River Railroad Company, it leased to the defendant railroad company the bridge by the lease in perpetuity, by name, but with the defeasance clause before referred to, that resulted in this court's declaring in its first opinion that the paramount title to the bridge yet remained in the bridge company; and as the owner of the title, it was the party to whom the bridge was properly assessed.

Not only does the lease accepted by the defendant railroad company, from the bridge company, show its recognition of the ownership in the bridge company at the time of the making of the lease and now, but all the facts, as disclosed by the contracts between the bridge company and the Louisiana & Missouri River Railroad Company, introduced in evidence by the defendant at the trial, show a recognition of the bridge company's ownership.

The defendant railroad company procured the Louisiana & Missouri River Railroad Company, whose officers are also the same officers as those of the defendant railroad company, to make the contract with the bridge company, with the conditions and agreements as above indicated, which go to show, that for some reasons, best known to the defendant railroad company itself, the bridge company was created and has been maintained by it, with the title to the bridge still kept in the bridge company, subject only to the lease to the defendant railway company for some purpose.

Where the defendants by their own showing have placed and left the title to the property, the court will leave it for the purpose of the assessment levy and collection of taxes.

The bridge company is not a mere myth, as contended by defendant railroad company, but a legal entity, created by the defendant railroad company itself, and furnished by it with all the funds that

entered into the construction of the bridge property, and endowed with full corporate life and power, exercised in such a way as to become by contract the owner of the bridge property by a conveyance in perpetuity by another corporate creation called the Louisiana & Missouri River Railroad Company also maintained and kept alive by the defendant railroad company for the sole purpose of having constructed in its name the bridge in controversy under its grant of power from congress, and which company at the instance of the defendant railroad company made a contract with the bridge company whereby the bridge company became possessed forever with the exclusive use of the bridge in controversy, and after that the bridge company then issued its bonds upon the bridge through its officer to the amount of seven hundred thousand dollars, at the request and for the use of defendant railroad company and same were sold by defendant railroad company and the proceeds thereof appropriated by it, and the bridge company then leased to the defendant railroad company the property thus acquired, with the condition therein that if the railroad company should fail to pay the annual interest on the bonds as it became due, and to pay all taxes and assessments against the bridge company, that lessor might reenter and dispossess the lessee of the property.

In a case reported in the 153 Ill. 409, for the taxes due on the Illinois portion of this bridge, when the same state of facts was shown as in this case up to this point of its discussion, the court, speaking through WILKIN, C. J., uses this language in closing the opinion: "We are unable to see upon what principle courts can be asked to ignore the direct and positive evidence of title as the parties have made it, and hold that appellant is the owner, by construction, merely, that it may be assessed by the state board of equalization instead of

the local assessor. Either from necessity or its own volition, appellant has never become the absolute owner of the property, but has left the legal title to the same in the Mississippi Bridge Company, and it is therefore subject to taxation against the latter by the township assessor of the town in which it is located." *Railroad v. People ex rel.*

But the appellant now contends that the bridge company is but a creation of the Chicago & Alton Railroad Company and that every dollar that was expended by that company in the construction of the bridge came direct from the treasury of its company, and that the bridge was in fact built for its sole benefit, so far as same could be done, under the act of congress authorizing its construction, with rights of use in other railroads to cross it under prescribed terms therein set out, all of which is probably true (and in a conflict between the two corporations, if a conflict were possible under the existing condition of the facts, the defendant railroad company would probably absorb the bridge company and be decreed the real owner of the bridge) except for the consideration that would be extended to the bridge company in order that it might defend and protect the bonds issued by it, which the testimony shows were used and sold to raise money solely for the benefit of the defendant railroad company. For reasons sufficiently beneficial to the railroad company, the bridge company was created, and through it the work of construction of the bridge was accomplished and the legal title thereof was afterward invested and suffered to remain there by the written recognition and acknowledgment of the defendant railroad company, and we do not feel called upon now to hold that the defendant railroad company is the owner of the property by construction, when the sole reason for doing so is to defeat an assessment

that has been made against the property as the law directs by those having that matter in charge.

Since the bridge company, as against the defendant railroad company, under the ruling in the case of *State ex rel. v. Bridge Co.*, 109 Mo. 253, is held to be the owner of the bridge by reason of the defeasance clause in the lease from the bridge company to the defendant railroad company, by reason of a lack of a similar clause in the contract entered into between the Louisiana & Missouri River Railway Company and the bridge company, the defendant railway company, as the assignee of the Louisiana & Missouri River Railway Company can not now be considered to be the owner of the bridge; for, while the contract between the Louisiana & Missouri River Railway Company and the bridge company provides that the railway company employed the bridge company "as its agent and servant to construct and maintain the bridge and approaches to be used in connection with the bridge," it further provides, "that in consideration of the money to be advanced by the bridge company in the construction of the bridge and the acquiring and constructing of the approaches thereto, and the services of the bridge company in and about the work of constructing same," "that the said second party (the bridge company) shall forever have the exclusive possession and use of said bridge, without let or hindrance of or from the said party of the first part (the railway company) which exclusive possession and use is agreed to be in liquidation of all sums advanced by said party of the second part, and for its services to be performed under this agreement" and further "each party shall at all times hereafter execute all such acts and things as may be necessary to carry this agreement into effect."

Notwithstanding the apparent awkwardness of the transaction of one corporation having another to con-

struct for it a bridge, as its agent and servant, and that agent and servant was required to do all acts and things about the work of construction that the master is usually expected to do, to wit, furnish the money that is to pay for all labor and material to be used in and about its construction, still, if the servant does all these things, it would have at the completion of its work, the absorbing interest therein, and the language above quoted from the contract shows conclusively (especially when taken in connection with all the surrounding facts in the case and the after recognition by the defendant railway company of the rights of the bridge company) that such was the contemplation of the contracting corporations. The expression in the contract, "said party of the second part (the bridge company) shall forever have the exclusive possession and use of the said bridge without let or hindrance of or from the said party of the first part" is language of an absolute conveyance, and the defendant railway company so construed it, when afterward it accepted its contract of lease from the bridge company and relied upon it when the case was here on its first appeal to show ownership in itself thereunder at the time.

In the language of WILKIN, Judge, above quoted, we repeat that, "from necessity or of its own volition, the defendant railway company has left the legal title to the bridge in the bridge company," and it is therefore subject to taxation as a bridge, and not as a part of defendant railroad company's roadbed.

The judgment of the trial court, as to that part of the tax designated "City of Louisiana tax," against plaintiff, will be sustained. That the tax had been levied without an antecedent compliance with the provisions of section 7654, Revised Statutes, 1889, is not denied; the plaintiff asserting that the levy, taken in its proper sense, upon the city property, by virtue of

the assessment made under its authority, on the certificate of the city to the county court, was complete without authority from the circuit court or the judge thereof in vacation, commanding such levy to be made; that the machinery provided by the statute for the collection of such tax is a mere matter of convenience to the party charged with the payment of the amount of tax due, by having it paid to the county collector together with the amount due for all other purposes; and that the tax due the city is simply required to go through the channel pointed out by the statute in order to find its way to the county tax books and thence into the hands of the collector.

We are ready to say, that we can see no substanstial reasons why the cities and towns of our state, wherever bridge property (of the character of that in controversy and railroad property) is located, in order to collect the taxes due from the owner thereof, should be required to get an order from the circuit court or judge thereof in vacation authorizing the levy of the tax to be imposed for the city or town; or why a law so cumbersome and utterly useless should remain so long unrepealed upon our statutes, but that such is the fact, in view of the clear language of the several provisions of our statute that lead to that absurd end, there can be no doubt.

By section 7755 of our statute it is provided that all taxes upon bridges over streams in this state or over streams dividing this state from other states, owned by joint stock companies, are to be levied and collected in the manner as is now, or may hereafter be, provided by law for the taxation of railroad property in this state. By section 7731 the county court is required to ascertain and levy the taxes for state, county, municipal and other purposes on railroads and the property

VOL. 134 mo—22

thereof, at the same rates as may be levied on other property, upon the receipt from the auditor of the certificate of the action of the state board of equalization, the return of the county assessors, and the certificates of cities, towns, and villages made under section 7730, which section provides that it shall be the duty of each city or town council, board of aldermen or board of trustees, as the case may be, of every city or incorporated town or village wherein any railroad property is located, on or before the tenth day of March of each year, to certify to the county court of their respective counties a statement of the assessment made in pursuance of section 7728 and also the rate per cent levied by such city or incorporated town or village on all property therein for municipal purposes for that year. Section 7654 provides that no tax for any purpose, other than those mentioned in section 7653, which are state taxes, and the taxes necessary to pay the funded or bonded debt of the state, the taxes for the current county expenses and for schools, shall be assessed, levied and collected, except upon the authority of the circuit court, or the judge thereof, commanding the county court to have levied and assessed the specified taxes sought and found by the circuit court to be necessary, and not in conflict with the laws of this state.

From a reading of the provisions of the above sections, in connection with each other, the conclusion is unavoidable that the taxes in favor of the city of Louisiana could not be legally levied on the property in controversy, except on the authority of an order of the circuit court of Pike county or the judge thereof in vacation, which was not obtained for the taxes now in suit designated "City of Louisiana Tax" and for which reason the judgment of the trial court in favor of defendant to such taxes will be sustained, without going into a discussion of the other questions raised against

the validity of the tax on the ground that it was in excess of the constitutional limit of fifty cents on the $100, or that no proper certificate of levy by the city had been filed with the clerk of the county court.

Defendant further contends that the levy of the taxes designated "Buffalo Township Tax" named in the tax bills in suit, is illegal and void also, for the reason that before the levy thereof, the circuit court of Pike county, or the judge thereof in vacation, had made no order to the county court, directing the same to be levied as provided by section 7654, Revised Statutes, 1889, and that the order from the judge of the circuit court to make a levy for the payment of interest on the bonded debt of the county and so much of the principal as the county court may deem expedient was not broad enough to cover Buffalo township tax.

While it is true that the township tax to pay bonds issued in aid of a railroad is not a county tax, nor would the scope of the order made by the circuit court to the county court, in this case, warrant the levy of the tax to pay the bonded indebtedness of Buffalo township, if an order was deemed necessary to vest in the county court authority to levy the tax in this instance, under the facts as they now appear before us, the county court alone has the power to levy the taxes that must pay this township indebtedness, and it will be presumed, in the absence of a showing to the contrary, that it has acted properly in so doing in this instance. Since the adoption of our constitution in 1875 Buffalo township has had no authority to issue its bonds in aid of any railroad or other corporation whatever, and as no intimation is made in the record as to the date of the indebtedness this levy is made to pay, it must be presumed to have been made prior to 1875, when such bonds could be lawfully issued, and if the bonds were issued before 1875 the provisions of section

7654, passed and enacted in 1879, would have no application, and there was no necessity for an order from the circuit court to the county court commanding the levy of that part of the tax required to pay Buffalo township indebtedness. The judgment of the circuit court will be affirmed in all particulars. BRACE, C. J., and BARCLAY, J., concur in result; MACFARLANE, J., not sitting.