MUNICIPAL ACCEPTANCE CORPORATION, a Corporation, Appellant, v. WILLIAM A. CANOLE, Collector of the Revenue of the County of Howard.—119 S. W. (2d) 820.

Court en Banc, September 6 1938.*

*NOTE: Opinion filed at May Term, 1938, August 8, 1938; motion for rehearing filed; motion overruled at September Term, September 6, 1938.

*Jones, Hocker, Gladney & Jones, Vincent L. Boisaubin, Sullivan, Reeder & Finley* and *Ralph T. Finley* for appellant.

*Roy McKittrick,* Attorney General, and *James L. HornBostel,* Assistant Attorney General, for respondent; *Walker Pierce* and *Tyre W. Burton* of counsel.

ELLISON, J.—The plaintiff below, a Delaware corporation, appeals from a decree of the Circuit Court of Howard County dismissing its bill for an injunction against the respondent tax collector of that county. On June 1, 1932, appellant owned $60,000 in pledge orders theretofore executed by the city of Fayette to Fairbanks, Morse & Company in payment for certain Diesel engines and accessory equipment furnished by the latter on a so-called conditional sale contract for the city's municipal electric plant. The pledge orders had been assigned to appellant by Fairbanks, Morse & Company along with its title to the machinery. The State Tax Commission, fixed the value of the machinery for taxation. The appellant took the matter to the State Board of Equalization which approved the assessment. Thereupon the appellant brought the instant injunction suit against the respondent collector.

There are only two issues in the case: (1) is injunction the proper remedy, or has appellant an adequate remedy at law; (2) was appellant the owner of the machinery in such sense as to make it liable to taxation thereon. On the first issue respondent says appellant can wait until it is sued for the taxes and interpose as a defense in that case the contentions it is making here; also that it has failed to do equity. On the second issue appellant maintains it had only a "security" title; that the beneficial, taxable title was in the city of Fayette; and that the collection of taxes from it (appellant) would violate Sections 9746 and 9756, Revised Statutes 1929 (Mo. Stat. Ann., pp. 7867, 7872), Section 30, Article II, Constitution of Missouri, and Section I of the Fourteenth Amendment of the Constitution of the United States.

On the proposition that appellant has an adequate remedy at law, respondent is clearly wrong. Appellant asserts the machinery did not belong to it for taxation purposes but was owned by the city of Fayette. The evidence of that does not and cannot appear on the face of the record of the State Board of Equalization. Hence the

question cannot be raised by certiorari. The statutes do not provide for an appeal from that board. It has been held such a defense cannot be made in an action at law to collect the taxes, because it would constitute a collateral attack on the "judgment" of the Board of Equalization. The appellant has exhausted its remedies before the State Tax Commission and the State Board of Equalization. Its only remedy is a direct attack in equity by injunction, and this is true although the property involved is personalty instead of land against which a statutory lien would exist. This proposition is settled by many decisions in this State, all of which respondent ignores. [State ex rel. Johnson v. Merchants & Miners Bank, 279 Mo. 228, 213 S. W. 815; Jacobs v. Cauthorn, 293 Mo. 154, 161-2, 238 S. W. 443, 445; Boonville National Bank v. Schlotzhauer, 317 Mo. 1298, 1317-8, 298 S. W. 732, 740, 55 A. L. R. 489; Jefferson City Bridge & Transit Co. v. Blaser, 318 Mo. 373, 380, 300 S. W. 778, 782; Brinkerhoff-Faris Trust & Savings Co. v. Hill, 281 U. S. 673, 74 L. Ed. 1107, 50 Sup. Ct. 451; Id., 323 Mo. 180, 194, 19 S. W. (2d) 746, 751; Brinkerhoff-Faris Trust & Savings Co. v. Hill, 328 Mo. 836, 42 S. W. (2d) 23; Washington University v. Baumann, 341 Mo. 708, 108 S. W. (2d) 403, 411.]

To support his contention that appellant does not offer to do equity respondent cites two cases in his Points and Authorities. [Dundee Mortgage Trust Inv. Co. v. Parish, 24 Fed. 197, and Northern Pac. Ry. Co. v. Walker, 148 U. S. 391, 37 L. Ed. 494, 13 Sup. Ct. 650.] But he does not refer to them in his written argument, and examination will show neither is in point. What he does say in argument is this:

"Appellant's bill for injunction does not offer to do equity, that is, if this court finds that appellant was liable for the tax by virtue of ownership of the property in question there is no assurance that appellant will pay same. In fact, appellant's actions are to the contrary. No appeal bond has been posted to insure the county of the collection of the tax in the event this court affirms the decision of the trial court. If this court should decide that appellant was the owner of said property on June 1, 1932, and thereby creating a personal debt for said tax, the collector of Howard County must then bring a suit for the collection of same and it is to be noted that appellant is a nonresident of this State and not authorized to do business, consequently, the question of service would be indeed a serious one."

We know of no law which would require the plaintiff in a suit like the present one to tender into court or otherwise guarantee the payment of the taxes if the judgment should be adverse. The record indicates the appellant did not give an injunction bond, but the law did not require it as a condition precedent to the maintenance of the suit. Nor are we advised why appellant must forfeit its rights in

equity because it has failed to give an appeal bond. The fact that respondent would be inconvenienced in the collection of the tax, if found legal, certainly is no reason why appellant should be denied its remedy altogether. This point also is ruled against respondent. We hold the appellant was entitled to seek injunctive relief.

In the discussion of the second issue presented we must state further facts. The electric machinery was furnished to the city by Fairbanks, Morse & Company on a so-called conditional sales contract. It provided that the "purchase price" of the new machinery should be paid in monthly installments evidenced by pledge orders payable only out of that part of the net earnings of the plant representing savings in the cost of production of electricity over the average cost of production theretofore during the year, 1926-1927. This was not to be a general obligation of the city and was not to be paid through taxation. The contract explicitly stipulated "that the title and ownership of the machinery and materials herein specified shall remain in the Company until final payment therefor has been made in full, as herein provided;" and further authorized Fairbanks, Morse & Company to assign any of the pledge orders, thereby passing to the assignee title to the machinery, etc.

Further clauses of the contract required the City to operate the plant in an efficient and economical manner, and allowed the Company to inspect the plant at any time to determine whether the same was being operated in that manner; bound the City to operate the plant as a city owned plant until it had been paid for, and forbid it to dispose of the plant without providing for such payments; provided the machinery should retain its character as personal property although attached to the plant; reserved to the Company the right to take possession of the machinery without process of law in event of default in the payments therefor, and to sell the same to the best advantage in accordance with the statutes relating to conditional sales; and required the Company to keep the machinery insured against loss by fire during the life of the contract, any funds derived from such insurance to be used in repairing or replacing the machinery.

Attached to the contract was a list of some 120 kinds of fuel oils recommended as suitable for use in the Diesel engines. Respondent proved that Fairbanks, Morse & Company twice sent representatives to inspect the machinery after the city was operating it; and that the representative insisted oils recommended in the list should be used. At that time the City was using an unbranded cylinder oil. The representative also instructed the City's plant superintendent to clean the carbon out of one of the engines with which he was having trouble. Fairbanks, Morse & Company paid for a fire insurance policy on the Diesel engines and accessories, to which were attached two loss payable clauses, one a standard Missouri form providing any loss might

be adjusted with the insured and Fairbanks, Morse & Co., and/or Municipal Acceptance Corporation (the appellant) as their respective interests might appear. The other clause, a National Board Standard Mortgage clause, made the loss, if any, payable to the Municipal Acceptance Corporation, as mortgagee or trustee as its interest might appear.

Respondent contends the fact that Fairbanks, Morse & Company reserved a right of control over the machinery and plant, as shown by the above stipulations and the acts of the parties interpreting them, prevented the contract from passing a taxable title to the City and left it in the Company. This appears to have been the view of the chancellor as expressed in a memorandum filed. Though not strictly a part of the record, we quote it in part:

"The apparent weight of authority supports the view that where the vendor in a conditional sale of personal property reserved the title merely as security for the payment of the purchase price, an assessment of taxes should be against the vendee. A number of cases, however, hold that where the vendor reserves rights or interests beyond a mere title for security, the property is assessable against the vendor. These latter cases are based upon the theory that the vendor had reserved something more than a mere 'security title.'

"The contracts in evidence here show that the vendor, in addition to reserving the title to the property itself also obligated the vendee to operate the plant (to which the property was added), in an efficient and economical manner, and reserved the right to inspect the plant at any time and to determine whether the same was efficiently and economically operated, and further reserved the right to received a certain portion of the earnings from the plant over and above the operating expenses.

"I am convinced that these facts distinguished the case from those relied upon by the plaintiff and bring it within the rule laid down by the latter class of cases mentioned above. In other words, the vendor, having reserved rights or interests in the property beyond a mere 'security title,' became liable to assessment in the discretion of the taxing authorities."

Apparently the respondent has not cited in his brief the authorities the chancellor had in mind when he wrote the foregoing memorandum. He relies chiefly on Bell v. City of Fayette, 325 Mo. 75, 28 S. W. (2d) 356, which construed the same contract involved here. In that case the question was whether the pledge orders given to pay for the machinery were debts in a constitutional sense; if they were the contract was void because they obligated the City beyond the limit set by Section 12, Article X of the State Constitution. The decision held they were not, saying (325 Mo. l. c. 93, 28 S. W. (2d) l. c. 362): "What sort of a suit under the contract could the company bring? Certainly not one to recover a general judgment for the purchase

price because the property is not sold; it is the property of the company until it is paid for." Respondent contends this was a judicial determination that the machinery was not sold but remained the property of Fairbanks, Morse & Co., or its assignee, until paid for.

But it must be remembered the question whether Fairbanks, Morse & Company owned the machinery for the purpose of taxation was not involved or thought of in the Bell case. The only point there under consideration was whether the pledge orders were debts within the meaning of the Constitution. However the decision did say (325 Mo. 1. c. 90, 28 S. W. (2d) 1. c. 361): "The word 'debt' or 'indebtedness,' as used in the limitation placed upon municipal power, is given a meaning much less broad and comprehensive than it bears in general usage," thus indicating the court was led to its conclusion by considerations very different from those which control here. And two pages further on the opinion referred to the transaction as a "contingent purchase." We shall come back to this case later.

Respondent cites three other decisions. The first is State ex rel. Potter v. Springfield Convention Hall Association, 301 Mo. 663, 257 S. W. 113. In that case the City of Springfield leased to the Association for fifty years a tract of land together with a building to be erected thereon by the lessee. The Association was to occupy the building during the term of the lease and to pay rent therefor, but subject to that use and occupancy the City had the entire title and the Association never was to acquire title. This court held on a construction of the lease that the Association was not liable for taxes on the building since it had no interest therein except as lessee. The case is obviously so different in its facts as to be without value as a precedent here. In Jasper Land & Improvement Co. v. Kansas City, 293 Mo. 674, 239 S. W. 864, land had been condemned by final judgment for a public improvement, but the damages had not been paid and the condemnor had not entered into possession when taxes on the land were assessed against the owner. It was held he was liable therefor. This case, also, is not in point. Respondent takes from State ex rel. Glenn v. Mississippi River Bridge Co., 134 Mo. 321, 332, 35 S. W. 592, 595, the following quotation: "Where the defendants, by their own showing, have placed and left the title to property, the court will leave it for the purpose of the assessment, levy and collection of taxes." The case dealt with complicated arrangements for the leasing of a bridge between a railroad company and two subsidiary corporations. We do not see that it has any bearing on this case.

Getting back to the theory of the chancellor's memorandum. The general rule is stated in 55 Corpus Juris, section 1173, page 1196, as follows: "A conditional sale contract may impose conditions other than or in addition to payment of the purchase price provided they are not inconsistent with a retention of title in the buyer and

provided they are not contrary to statute or in contravention of some principle of public policy. . . . On the other hand, any condition in a contract of conditional sale which is inconsistent with the retention of title in the seller, or which waives or thwarts the procedure provided by statute relating to conditional sales and intended for the benefit and protection of the buyer is void.''

With reference to taxation the same work, 61 Corpus Juris, section 188, pages 211-212 says, ''Where there has been a conditional sale of personalty, it has been variously held that the seller, or buyer, is primarily liable for taxes, or that the state may, at its option, assess either.'' There are only two cases, so far as we have found, holding that taxes are to be assessed against the seller.[1] Three decisions say the public authorities may proceed against either the conditional vendor or vendee[2] though two of these declare that as between the parties the latter should pay the taxes. The weight of authority is to the effect that the purchaser in possession is the party liable.[3]

In our opinion the last view is correct. We have found no better reasoned decision on this point than Wells v. Mayor, etc., City of Savannah, 87 Ga. 397, 13 S. E. 442. In that case the Georgia Supreme Court, speaking through BLECKLEY, C. J., said: ''The value of property consists in its use, and he who owns the use forever, though it be on a condition subsequent, is the true owner of the property for the time being. . . . Where taxation is *ad valorem*, values are the ultimate objects of taxation, and they to whom the values belong should pay the taxes.'' Paraphrasing, the learned Chief Justice then pointed out that where property is sold on conditional sale it is taxable against the vendee in possession, and the installments of the purchase price are taxable against the vendor; that the buyer alone sustains the losses or enjoys the gains of depreciation or appreciation in the value of the property, whereas the seller risks only the fluctuation in the value of the property as *security* for the debt due him.

Likewise, another leading case on the question of taxing property sold on conditional sale, State v. White Furniture Co., 206 Ala. 575, 90 So. 896, says: ''When a statute requires that property be assessed to the owner, we think it means the general and beneficial owners—

---

[1]Wanee v. Thomas (1925), 75 Cal. App. 231, 242 Pac. 509; Remington Cash Register Co. v. State Board of Taxes and Assessments (1930), 8 N. J. Misc. 875, 152 Atl. 330.

[2]Weber Showcase & Fix. Co. v. Kaufman (1935), 45 Ariz. 397, 44 Pac. (2d) 158, 159 (under statute); Automatic Voting Machine Corp. v. Maricopa Co. (1937), 70 Pac. (2d) 447, 449; Jordan v. Baggett (1927), 37 Ga. App. 537, 140 S. E. 902.

[3]Ex parte State, State v. White Furn. Co. (1921), 206 Ala. 896, 90 So. 575; State v. White Furn. Co. (1921), 90 So. 895; Wells v. Mayor, etc., City of Savannah (1891), 87 Ga. 397, 13 S. E. 442; Massey-Harris Co. v. Lerum (1932), 60 S. D. 12, 242 N. W. 597, 598 (1); State v. J. I. Case Co. (1933), 189 Minn. 180, 248 N. W. 726; Bowls v. Oklahoma City (1909), 24 Okla. 579, 104 Pac. 902, 24 L. R. A. (N. S.) 1299; Buttram v. Gray County, Texas (1932), 62 Fed. (2d) 44.

that is, the person whose interest is primarily one of possession and enjoyment in contemplation of an ultimate absolute ownership—and not the person whose interest is primarily in the enforcement of a collateral pecuniary claim, and does not contemplate the use or enjoyment of the property as such.''

In the instant case Fairbanks, Morse & Company furnished to the City of Fayette for its municipal electric plant machinery worth $75,000. The City entered into possession thereof and operated the same, receiving and retaining all the profits from such operation without becoming indebted to the vendor (as the Bell case held) except that it was to pay the purchase price of the machinery out of its *saving,* if any, from the cost of manufacturing electricity theretofore. When it had paid that purchase price it was to become the absolute owner of the machinery. In other words it got the machinery and all the electricity it generated during the life of the contract for the same price it would have formerly cost to manufacture the electricity alone. The vendor bound itself to surrender its title to the machinery to the City beyond recall on these conditions. Can it be doubted in these circumstances that the City was the beneficial owner of the property?

But it is said in the memorandum of the learned chancellor below that Fairbanks, Morse & Company retained more than a mere security title in the sale contract: by obligating the city to operate the electric plant in which the machinery was installed in an efficient and economical manner; by reserving the right to inspect the plant at any time to determine whether the same was efficiently and economically operated; and by reserving the right to receive a portion of the net earnings of the plant. The Bell case, supra, 325 Mo. l. c. 94, 28 S. W. (2d) l. c. 363, had something to say about that. In that case it was contended the contract was void because it took control of the plant away from the Public Service Commission. This court rejected that contention, saying: ''It is further complained by appellant that the contract allows the corporation, Fairbanks, Morse & Company, to control and operate the plant. The contract merely provides that the city agrees 'to operate the plant in an economical manner and the company shall have authority to inspect the plant at any time to determine whether the same is efficiently and economically operated.' . . . The ownership of the engines remains in the company until paid for, and the right to inspect and see whether the city is living up to its contract by operating the plant in an economical manner does not give the company any right to regulate the operation of the plant, nor any supervision over it.''

In the eye of equity the machinery belonged to the city with a defeasible title in Fairbanks, Morse & Company to secure the purchase price. In that aspect the arrangement resembled a chattel mortgage, 11 Corpus Juris, section 14, page 411; and as is said in 41 Corpus Juris, section 260, page 412, speaking generally of mortgages:

"It is competent for the parties to insert in a mortgage any conditions or stipulations intended for the better securing of the mortgage debt, or to make the security more effective, provided they are not so oppressive as to be unconscionable; and such agreements are not invalid, as fettering the equity of redemption, although they may hinder the mortgagor in the free use or disposition of the premises."

All of the reservations incorporated in the instant contract and mentioned in the chancellor's memorandum were, in our opinion, allowable restrictions. We particularly refer to another provision singled out by him whereby the vendor "reserved the right to receive a certain portion of the earnings from the plant over and above the operating expenses." It will be remembered what the contract required was that the purchase price be paid in monthly installments on pledge orders out of the *saving* in the cost of production of electricity. This certainly was a valid stipulation. It was held in Buttram v. Gray County (Tex.), 62 Fed. (2d) 44, 47(4) that the reservation by the vendor of *all* the production from an assigned interest in an oil and gas lease to apply on the purchase price, was not an invalid encroachment on the vendee's rights as owner of the interest.

Respondent supplements the chancellor's conclusions with another contention. The Bell case (325 Mo. 75, 28 S. W. (2d) 356) as already stated, held the pledge orders issued by the city of Fayette to Fairbanks, Morse & Company were not a *debt*. He argues from this that the contract was not a conditional sale contract because there must be a debtor-creditor relation to create such a contract. We understand the respondent to mean by this a debt in the sense of an unconditional obligation to pay a definite sum at a specified time. [2 Words & Phrases (1 Ser.), p. 1868; Id. (2 Ser.), p. 1228.] There is nothing so providing in Sections 3125 and 3126, Revised Statutes 1929 (Mo. Stat. Ann., pp. 1963, 1965). If possession is delivered to the vendee and title retained in the vendor until the purchase price is paid the sale is conditional and there is no reason why payment, also, may not be conditional.

Indeed, it is stated in 55 Corpus Juris, section 1169, page 1194: "A conditional sale contemplates the relation of seller and buyer, and does not create the relation of debtor and creditor." Again the same work says (55 C. J. sec. 1171, p. 1195): "While it has been held in some jurisdictions that the optional payment of price is as essential to conditional sales as the conditional passing of title, the general rule supported by the weight of authority is that, other elements of conditional sale being present, the transaction is not the less a conditional sale because the promise to pay is absolute." This is another way of saying the fact that the promise to pay is absolute will not *prevent* a sale from being conditional, which necessarily means the sale may be conditional when the promise to pay is *not* absolute. The prevailing doctrine is that any valuable consideration

will support a sale. [55 C. J., sec. 30, p. 66. See, 24 R. C. L., sec. 745, p. 447.]

The decree of the chancellor dismissing appellant's bill is reversed and the cause remanded with directions to reinstate appellant's bill and to enter a decree awarding it a perpetual injunction as prayed. All concur, except *Douglas, J.,* not sitting, because not a member of the court when cause was submitted.