In the Matter of the Petition of the CITY OF RICH HILL, MISSOURI, a Municipal Corporation, for a Pro Forma Decree authorizing the issuance of $24,400.00 principal amount of electric plant bonds of said city, CITY OF RICH HILL, v. JOHN A. CONNELLY, Intervener-Appellant.—No. 38812.—175 S. W. (2d) 834.

Court en Banc, December 6, 1943.

*H. E. Sheppard* for appellant.

*Bowersock, Fizzell & Rhodes* for respondent.

**CLARK, J.**—The City of Rich Hill filed a petition in the circuit court under the provisions of Sections 3312 to 3316, inclusive, Revised Statutes Missouri 1939, [Mo. R. S. A. pp. 495, 497, vol. 10] asking a pro forma decree confirming the validity of an issue of bonds by the city. Connelly, as a taxpayer, filed an intervening petition in opposition. After a trial a decree was entered on July 22, 1943, sustaining the validity of the bonds and intervener appeals.

Rich Hill is a city of the fourth class, containing less than 30,000 inhabitants. It owns its light plant and has owned same continuously since prior to 1938. In that year the City made a contract with Fairbanks-Morse and Company for the purchase of certain equipment to be used in connection with the plant, and to be paid for with six per cent annual interest, solely out of revenue from the plant at the rate of $400.00 per month. In 1941 the city purchased additional equipment from the same company and by the contract of purchase agreed to pay for the new equipment and the unpaid balance on the first purchase with five per cent annual interest, solely out of plant revenue at the rate of $400.00 per month. The equipment was received and installed and the city issued and delivered to the seller nonnegotiable, but assignable, certificates to evidence the monthly payments to be made. The contract provided that the equipment should remain personal property even though installed on permanent foundation or attached to the realty; that the title remain in the

seller until the purchase price be paid in full and then pass to the city without further transfer; and upon default in the payment of any monthly installment the whole unpaid balance would become due and the seller could take the equipment, sell the same and apply the proceeds to the payment of the unpaid balance and pay the surplus, if any, to the city. · In 1943 the city submitted to the qualified voters a proposal to issue bonds in the sum of $24,400.00, payable out of general revenue, for the purpose of paying the balance remaining unpaid on its contract with Fairbanks-Morse and Company. An election was duly held and the proposed bond issue was approved by the requisite majority of the voters. The city has contracted to sell the bonds, bearing three per cent annual interest, at par.

As some points made by appellant are not disputed by respondent, we resort to a process of elimination in order to simplify the issues. It is not contended that there is any invalidity in the contracts of 1938 and 1941, requiring the purchase price of the equipment to be paid solely out of plant revenue. Nor is it contended that there is any irregularity in the proceedings leading up to and including the election for the bond issue in 1943. It is conceded by respondent that the bond issue of $24,400.00, when added to the existing outstanding indebtedness of the city, will amount to more than five per cent of the assessed valuation of all taxable property in the city and that the bonds are not authorized by the provisions of Section 12 of Article 10 of our state constitution. The evidence shows that the total indebtedness of the city, including the proposed bond issue, will be less than the debt limit imposed by Section 12a of Article 10 of the state constitution.

The sole issue, then, is as to whether the bonds are valid under the last mentioned section of the constitution which authorizes cities of the class to which Rich Hill belongs to issue bonds "for the purpose of purchasing or constructing . . . electric or other light plants, to be owned exclusively by the city so purchasing or constructing the same". [Section 7554, R. S. Mo. 1939, (Mo. R. S. A. p. 421, vol. 17) was passed pursuant to and follows the language of Section 12a of Article 10 of the constitution.]

In State ex rel v. Allen, 183 Mo. 283, 82 S. W. 103, this court construed the above section of the constitution and expressly held that the power to issue bonds for "purchasing or constructing" a plant includes the power to issue bonds to purchase or construct extensions or improvements to an existing plant. We think that is good law and in accord with the decisions of other courts. [See State ex rel. Edwards v. Millar, 21 Okla. 448, 96 Pac. 747; Thomason v. Court, 184 Ala. 28, 63 So. 87; Town of Pelham v. Woolsey, 16 Fed. 419.] In the instant case when the contracts were made in 1938 and 1941 the city would have had the undoubted right to submit to the voters a bond issue to pay the purchase price of the equipment then purchased for the ex-

tension or improvement of its plant. So, the issue may be still further narrowed to the question of whether the city still has the constitutional power to issue bonds to pay the purchase price of such equipment, or that part of the purchase price which yet remains unpaid.

Appellant argues that the bond issue is not for the purpose of purchasing a plant, for the city already owns its plant; nor for purchasing additions to the plant, for nothing will be added and the plant will remain just as it now is whether or not the bonds be issued. But we think the bond issue comes within the permissive language of the constitution, because the purpose is to *complete* the purchase of the equipment which was used as an extension or improvement of the plant. The contract of purchase provided that title should not pass to the city until the purchase money was paid in full. It also provided that the city could ''not sell, pledge, mortgage, or otherwise part with the possession of the equipment or any part thereof'', and contained other restrictions inconsistent with complete ownership.

In Municipal Acceptance Corporation v. Canole, 342 Mo. 1170, 119 S. W. (2d) 820, this court en banc considered a contract very much like the one being considered here. There the city of Fayette had made a contract with Fairbanks-Morse and Company for the purchase of certain equipment to be used in connection with the city's electric plant and had issued pledge orders to evidence the installments of the purchase price. These pledge orders together with its title to the equipment were assigned by the seller to the Acceptance Corporation and the question arose as to the ownership of the equipment for purposes of taxation. We held that the contract amounted to a conditional sale; that in the eye of equity the machinery belonged to the city with a defeasible title in the seller to secure the purchase price; that the city was the beneficial owner, and the property was not taxable to the seller or its assignee. We think the ruling in that case is sound, but, while it holds that the buyer becomes the owner for tax purposes, it does not go to the extent of holding that under such a contract the buyer becomes the *complete* or *exclusive* owner. The seller also retains a title, or rights, which restrict the buyer's title even to a greater extent than would an ordinary mortgage. Under another provision of the constitution we have held that for some purposes a mortgagee, as well as the mortgagor, is an ''owner''. [Morgan v. Willman, 318 Mo. 151, 1 S. W. (2d) 193; Guaranty Savings & Loan Assn. v. Springfield, 346 Mo. 79, 139 S. W. (2d) 955.]

In State ex rel. v. Allen, supra, [183 Mo. l. c. 291] we said that, while grants of power to municipalities are to be strictly construed, the construction must not be so strict or technical as to defeat the evident objects and purposes of their creation. Section 12a of the constitution was designed not only to enable a city to acquire a light plant, but to acquire it in such a manner that it will be exclusively

owned by the city. Under the present contract the City of Rich Hill is not the exclusive owner of its entire light plant. If the proposed bond issue is valid the city will become the unrestricted and exclusive owner and will reduce its interest charges from five per cent to three per cent per annum.

We hold the bond issue is for the purpose of completing the purchase of extensions to the city's light plant, and is valid.

The decree is accordingly affirmed. All concur.